DARRELL ROGERS,

                Plaintiff,

v.                                             Case No. 25-cv-167-pp

RANDALL HEPP, *et al.*,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), GRANTING PLAINTIFF'S MOTION TO SCREEN COMPLAINT (DKT. NO. 7), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE**

Plaintiff Darrell Rogers, who is incarcerated at Racine Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.[1]

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

---

[1] The plaintiff also filed a motion asking the court to screen his complaint. Dkt. No. 7. Because this order screens the complaint, the court will grant the plaintiff's motion.

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On February 6, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $45.99. Dkt. No. 5. The court received that fee on March 4, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

   A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

2

plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff sues Randall Hepp, the warden at Waupun Correctional Institution; Tonia Moon and L. Wilson, who are institution complaint examiners at Waupun; Angela Davis, food service manager; and Officer Passig. Dkt. No. 1 at 2. The plaintiff alleges that on February 3, 2022, he was scheduled to attend the law library at 8:30 a.m. but when he was let out of his cell to go there, his law library pass was not in the cell hall. Id. at ¶¶1-2. He states that his pass "was in foodservice (kitchen) because [he] was scheduled to work in the bakery and the pass log and passes for all foodservice workers scheduled to work go to the kitchen." Id. at ¶3. The plaintiff alleges that he "was made to stay in the cell because [he] had a law library pass, per an unsanctioned rule [defendant] Foodservice Manager Angela Davis made up." Id. at ¶4. Based on this rule, foodservice workers scheduled to work had to cancel

3

their passes or stay in the cell hall because Davis did not want anyone at work "to go on pass[.]" Id. at ¶5.

The plaintiff alleges that he asked Sergeant Williams (not a defendant) to bring his pass to the cell hall. Id. at ¶6. Williams allegedly called the kitchen and spoke to defendant Passig. Id. at ¶7. The plaintiff states that Williams told him that Passig said that the plaintiff's law library pass had been cancelled. Id. at ¶8. The plaintiff allegedly knew that this was not true, and he told Williams and Sergeant Reynolds (not a defendant) that he "was about to lock [him]self in I-50 and that [he] would like for them to call the white shirt (lieutenant) because [he] can't go to [his] law library pass for no apparent reason." Id. at ¶¶9-10. Reynolds allegedly called the law library, found out that the plaintiff's law library pass was not cancelled and allowed the plaintiff to go to the law library, although he was thirty minutes late. Id. at ¶12.

The plaintiff alleges that he filed an inmate complaint about Davis's "unsanctioned rules" that evening. Id. at ¶15. On February 7, 2022, defendant Moon allegedly returned the plaintiff's inmate complaint unprocessed. Id. at ¶16. The plaintiff states that Moon misconstrued his complaint as having more than one issue. Id. The next day, the plaintiff allegedly resubmitted his complaint and clarified that his one issue was staff misconduct. Id. at ¶17. He states that he also explained that the food service procedure Moon had identified as a separate issue was a "supporting relevant document." Id. at ¶18. On February 18, 2022, the plaintiff allegedly wrote to Moon that he had not received an "ICE receipt" for his inmate complaint, and that his complaint had not been given a complaint number, which meant that it had not been processed. Id. at ¶¶19-20. The plaintiff states that Moon responded, stating, "I do see it was returned," but she never sent him a processed complaint or

4

instructed him what to do next. Id. at ¶¶21-22. Moon allegedly misconstrued and obstructed the grievance process after the plaintiff properly submitted a complaint. Id. at ¶23.

The plaintiff alleges that on February 24, 2022, he submitted complaint WCI-2022-3593 "for staff misconduct on Moon who deliberately obstructed the grievance process in retaliation for [the plaintiff] submitting [a] grievance." Id. at ¶24. On March 1, 2022, defendant Wilson allegedly arbitrarily rejected the complaint. Id. at ¶26. The plaintiff states that Wilson lied by stating, "ICE Moon has nothing left unprocessed from [the plaintiff]." Id. at ¶27. The plaintiff allegedly appealed the rejection of his complaint, and defendant Hepp disregarded the evidence and arbitrarily rejected the complaint. Id. at ¶¶29-30.

The plaintiff alleges that on March 10, 2022, he filed complaint WCI-2022-4566 "for staff misconduct detailing the above facts." Id. at ¶31. He states that on March 17, 2022, Moon attempted to "hush" the plaintiff and misled him into believing that he could not submit a grievance about misconduct of the institution complaint examiner with the following statement on WCI-2022-4566: "[The plaintiff] must also realize that a complaint that requests or would prompt redress or any new evaluation of issues within any prior complaint, including the ACTIONS OF THE ICE WHO PROCESSED THAT PRIOR COMPLAINT, is merely an appellate action and would be contrary to DOC 310.09 and DOC 310.10." Id. at ¶33. The plaintiff asserts that Moon's statement gave a false narrative and that the "misconduct of the Institution Complaint Examiner occurs once they choose to deliberately mislead, deliberately misconstrue, deliberately give false information, deliberately falsify an official document and deliberately disregard relevant evidence etc . . . during the review process of the grievance." Id. at ¶34. He states that this amounts to

5

a different issue from the issue the institution complaint examiner reviewed. Id. On March 23, 2022, the plaintiff allegedly appealed WCI-2022-4566. Id. at ¶35. Six days later, Hepp allegedly rejected the grievance. Id. at ¶36.

The plaintiff alleges that the Inmate Complaint Review System at Waupun is not impartial. Id. at ¶37. He states that institution complaint examiners arbitrarily reject complaints, and that rejected complaints cannot be appealed to Madison for review. Id. This allegedly creates an unfair advantage in the grievance process. Id. at ¶38.

The plaintiff claims that the defendants violated his rights as follows: (1) Davis forced the plaintiff to choose between working or going on law library pass, which violated the plaintiff's right to be free from retaliation under the United States Constitution and the Wisconsin Constitution; (2) Passig lied about the plaintiff's law library pass being canceled in retaliation for the plaintiff asking to go to the library, in violation of his federal and state constitutional rights; (3) Moon misconstrued and failed to process the plaintiff's properly submitted grievance in retaliation for the plaintiff submitting the grievance, which violated his rights under federal and state law; (4) Wilson and Moon misconstrued and falsified official documents in retaliation for the plaintiff filing grievances; (5) Hepp condoned and agreed with Wilson and Moon, in violation of the plaintiff's federal and state constitutional rights; and (6) Wilson, Moon and Hepp rejected properly filed grievances which violated the tort of abuse of process under Wisconsin state law. Id. at 8-9.

The plaintiff seeks declaratory relief, nominal damages and punitive damages. Id. at 9-10.

6

Case 2:25-cv-00167-PP     Filed 10/10/25     Page 6 of 11     Document 8

C.  Analysis

To establish a *prima facie* case of retaliation in violation of the First Amendment, a plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." Whitfield v. Spiller, 76 F.4th 698, 707-08 (7th Cir. 2023) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)).

The plaintiff's allegations do not state a plausible claim for retaliation against Davis or Passig. The plaintiff alleges that Davis created "an unsanctioned rule" that required incarcerated individuals who had a pass to go to the law library, church, etc., to not report to work in the foodservice department because Davis "didn't want anyone to go on pass if they were at work." Dkt. No. 1 at ¶5. The plaintiff states that he had a law library pass on February 3, 2022, a day that he also was scheduled to work in the bakery. He had to stay in his cell instead of reporting to work, although his pass was in the bakery. Officer Passig, who worked in foodservice, initially told Sergeant Williams that the plaintiff's law library pass had been canceled but Sergeant Reynolds later called the library and learned that it had not been canceled. The plaintiff made it to the library thirty minutes late.

The plaintiff does not allege that Davis targeted him with the "unsanctioned rule" about incarcerated individuals not working in foodservice on days that they had passes. Rather, Davis's alleged motivation for the rule was that she did not want incarcerated individuals to go on a pass when they were at work. Regarding Passig, the plaintiff alleges only that Passig lied and said that the plaintiff's law library pass had been canceled. But the plaintiff

does not allege that Passig lied because the plaintiff engaged in First Amendment protected activity. The plaintiff has not alleged that he even spoke to Passig. And after Passig incorrectly told Williams that the plaintiff's pass had been canceled, Reynolds called the library and learned that it had not been canceled, and the plaintiff went to the law library. The plaintiff's allegations do not state a *prima facie* retaliation claim against Davis and Passig.

The plaintiff alleges that Moon misconstrued and failed to process the first inmate complaint the plaintiff submitted, that Wilson and Hepp improperly rejected complaint WCI-2022-3593 that the plaintiff submitted about Moon's conduct and that Moon and Hepp improperly rejected WCI-2022-4566, the complaint the plaintiff submitted about Moon, Wilson and Hepp's conduct. He says that the way these defendants processed the grievances amounted to retaliation because he filed grievances. But the jobs of these defendants were to process the plaintiff's grievances. The plaintiff did not agree with how they processed his grievances, but that disagreement does not amount to a constitutional violation. The plaintiff's allegations that Moon, Wilson and Hepp improperly processed his inmate complaints do not implicate his constitutional rights. See Owens v. Hinsley, 635 F.3d 950 (7th Cir. 2011) (alleged mishandling of incarcerated individual's grievances by persons who otherwise did not cause or participate in the underlying conduct did not state claim under First Amendment or Due Process Clause); George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a complete act of misconduct does not."); Antonelli v. Sheahan, 81 F.3d 1422,

1432 (7th Cir. 1996) (A state's grievance procedures do not give rise to a liberty interest protected by the due process clause.).

Although courts generally give civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so where the amendment would be futile. See Zimmerman v. Bornick, 25 F.4th 491, 492 (7th Cir. 2022). The plaintiff's complaint is thorough in its allegations of the facts surrounding his claim, so the court finds that further amendment would be futile. Because the plaintiff has not stated a claim for which this federal court may grant relief, the court must dismiss his complaint.

The plaintiff also alleges that the defendants violated his rights under Wisconsin state law. But a federal court may not hear cases involving only state-law claims unless a plaintiff can establish diversity jurisdiction under 28 U.S.C. §1332. Diversity jurisdiction exists when (1) the amount in controversy exceeds $75,000; and (2) the parties are citizens of different states. 28 U.S.C. §1332. The plaintiff seeks less than $75,000 in damages, and his complaint suggests that most if not all the parties are citizens of Wisconsin. Because the amount in controversy does not exceed $75,000 and the parties are not citizens of different states, this federal court does not have subject-matter jurisdiction over any state-law claim the plaintiff may have. The court will dismiss this case without prejudice, which means the plaintiff is free to file a lawsuit in state court regarding his state law claim.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **GRANTS** the plaintiff's motion to screen the complaint. Dkt. No. 7.

The court **ORDERS** that this case is **DISMISSED WITHOUT PREJUDICE** because the complaint fails to state a claim for violation of the plaintiff's rights under federal law and this court lacks subject-matter jurisdiction over any state law claim the plaintiff may have. The court will enter judgment accordingly.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$304.01** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Racine Correctional Institution, where the plaintiff is confined.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a

motion *in this court.* See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed a "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 10th day of October, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**